## JAMES MITCHELL *et al.*

### *v.*

## SETH T. SAWYER *et al.*

*Filed at Mt. Vernon January 25, 1886.*

1. FRAUDULENT CONVEYANCE—*giving mortgage for too large a sum.* If a mortgage is given by a debtor on land for too large a sum, for the purpose of protecting the property from creditors, it will be fraudulent and void as to them.

2. SAME—*on secret trust for use of grantor.* If a debtor conveys land to another under a secret trust connected with the transaction, that the grantor is still to have the beneficial enjoyment, in whole or in part, of the property conveyed, such secret trust will render the deed fraudulent and void as to creditors.

3. EVIDENCE—*whether party bound by the testimony of his own witness.* While a party may not discredit his own witness by direct impeaching testimony, he is not bound, necessarily, by all the testimony his own witness may give. So where he makes an adverse party his witness, he will not be bound by his conclusions, when the facts and circumstances detailed by him show the contrary.

4. SAME—*conclusions of witness as against inferences from facts shown.* The statement by a witness that a transaction was upon good consideration and all in good faith, is but a conclusion, as, what he may deem honest and fair the law may pronounce fraudulent as to creditors; and such statement is of but little weight as against facts and circumstances which show the contrary.

5. WITNESS—*competency—objection obviated by stipulation.* On bill to set aside a fraudulent conveyance after the death of the grantee, and before making his heirs or devisees parties, depositions were taken in the case, one of which was that of one of the complainants. This was objected to as inadmissible against those defending as executors and trustees and devisees of the grantee; but after they were made parties and had answered, a stipulation was filed that the deposition taken should apply to the defendants so brought into the case: *Held*, that this obviated all the objections to the depositions.

6. DOWER—HOMESTEAD—*effect of decree setting aside fraudulent conveyance.* A decree, on bill by a creditor, setting aside a conveyance of land as fraudulent, and subjecting the same to sale, without any provision as to the dower and homestead of the wife of the deceased grantor, is not erroneous for that omission. Such rights are not affected by the decree, and when

the sheriff comes to sell on execution, he should deal with the homestead as the statute directs.

7. DECREE—*setting aside fraudulent conveyance — not providing for payment of debt.* A decree on creditor's bill setting aside a fraudulent conveyance of land need not provide for the payment of the judgment which had been recovered, by the fraudulent grantor or mortgagor, whereby to avoid a sale. This may be done without any such provision.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Messrs. METCALF, BRADSHAW & YAGER, for the plaintiffs in error:

Fraud is a question of fact, and must be proved like any other fact, and is never presumed. *Cameron* v. *Savage*, 37 Ill. 172; *Hatch* v. *Jordon*, 74 id. 414; *Jarrett & Root* v. *Cook*, 81 id. 260.

Both grantor and grantee must have participated in the fraud, and this must be proved. *Hatch* v. *Jordon*, 74 Ill. 414.

A person, though insolvent and embarrassed financially, may sell his property to pay his debts. *Wood* v. *Shaw*, 29 Ill. 444.

The want of a valuable consideration may be a badge of fraud, but is only presumptive, not conclusive, evidence of it. *Morrity* v. *Hoffman*, 35 Ill. 553.

A fraudulent deed is conclusive as to the grantor and his heirs, though voidable as to creditors of the grantor. *Lyons* v. *Robinson*, 46 Ill. 276; *Horner* v. *Zimmerman*, 45 id. 14; *Rawdon* v. *Fox*, 65 id. 200; *Railroad Co.* v. *Phillips*, 60 id. 190; *Rappleye* v. *International Bank*, 93 id. 396.

No matter how much a man may be indebted, he may sell his property for a fair price, or even below its market value, if done honestly, and with no intent to delay, hinder or defraud his creditors. *Wadhams* v. *Humphrey*, 22 Ill. 661; *Bowden* v. *Bowden*, 75 id. 143.

Where no lien exists to prevent, a party, though in debt, may, in good faith, for an adequate consideration, sell his property to whom he pleases. *Miller* v. *Kirby*, 74 Ill. 242.

After cancelling the fraudulent deed, the decree should have provided that the homestead be assigned before sale. *Jaffers* v. *Aneals*, 91 Ill. 487; *Leupold* v. *Krause*, 95 id. 440.

The decree should have provided not only that James Mitchell, but, on his default, any of the mortgagees or grantees, could pay the amount of the judgment and costs. As between the parties those conveyances are good, in any event, as shown by authorities. *Rappleye* v. *International Bank*, 93 Ill. 396.

Messrs. WISE & DAVIS, and Mr. R. S. SAWYER, for the defendants in error:

The conveyances made by James Mitchell were fraudulent and void as to creditors, because—

*First*—He conveyed all his property with intent to defraud, hinder and delay his creditors, and without consideration, reserving and retaining nothing to pay his debts. *Emerson* v. *Bemis*, 69 Ill. 537; *Jaffers* v. *Aneals*, 91 id. 487; *Phelps* v. *Curtis*, 80 id. 109.

*Second*—The conveyance to his brother, John Mitchell, was made with the secret trust and understanding and agreement that he (James Mitchell) was to live on the land and receive the benefit derived from it as long as he and his wife lived. *Moore* v. *Woods*, 100 Ill. 451; *Power* v. *Alston*, 93 id. 587; *Jones* v. *King*, 86 id. 225.

*Third*—That after the conveyance of the land to his brother, James Mitchell, he continued to reside on the land the same as he previously did, there being no evident change of ownership. *Jones* v. *King*, 86 Ill. 225; *Bell* v. *Devore*, 96 id. 217; *Moore* v. *Wood*, 100 id. 451; *Fleming* v. *Hiob*, 3 Bradw. 390; *Power* v. *Alston*, 93 Ill. 587.

*Fourth*—The price claimed to be paid by John Mitchell was grossly inadequate, which, with the other circumstances, showed the conveyance to him was fraudulent as to creditors. *Jaffers* v. *Aneals,* 91 Ill. 587 ; *Stevens* v. *Dillman,* 86 id. 223 ; *Jones* v. *King,* id. 225.

*Fifth*—The conveyance to John Mitchell was under a secret trust. Consequently, even if the debt is subsequent to the conveyance, it must be set aside. *Jones* v. *King,* 86 Ill. 229.

Mr. Justice Sheldon delivered the opinion of the Court:

This was a creditor's bill, filed by the complainants, to set aside as fraudulent and void as to creditors, two mortgages and a deed of lands, described in the bill, made by James Mitchell. The circuit court decreed the relief sought. On appeal to the Appellate Court for the Fourth District the decree was affirmed, and the defendants bring this writ of error.

It appears from the evidence, that James Mitchell, in the year 1880, was indebted to the complainants in the sum of $1033, and also to one Peter Robertson in the sum of about $1200. Whilst so indebted he was the owner of a farm, near Alton, of about one hundred and twenty-seven acres, some fifteen acres of it coal land, and worth about $9700. He had also personal property and other·real estate worth at least $2500. On this farm Mitchell placed a mortgage to Sweetser & Priest of $1000. On May 17, 1880, a mortgage on the land for $2000 was made to his brother, John Mitchell, and a like mortgage for $2000 was made to John Hamilton, May 6, 1881; and on October 13, 1881, James Mitchell made a deed of the farm to his brother, John Mitchell. It is this deed and mortgage to John Mitchell, and mortgage to John Hamilton, which the bill seeks to have set aside. James Mitchell had previously sold his other real estate to Hamilton, and his brother, John Mitchell, and the personal

property had been passed to the son of James Mitchell, so that in 1882, when complainants and Robertson obtained judgments on James Mitchell's indebtedness to them, James Mitchell had disposed of all his property, and executions on the judgments were returned no property found. Complainants and Robertson then each filed a creditor's bill to set aside the conveyances as fraudulent as to them, and the suits were tried together.

As respects the mortgage to John Hamilton, it appears from the evidence that Hamilton was an intimate friend of James Mitchell, and had lived in his family for years; that he is old and nearly blind, says himself that it is over ten years since he could do much, and that in 1874 he was worth in the neighborhood of $3000. He and Mitchell state that Hamilton had a note against Mitchell for $1150; that to secure its payment Mitchell gave to Hamilton a mortgage on a lot in Upper Alton, and a chattel mortgage on personal property. This chattel mortgage seems to have covered all the personal property on the place. Afterwards there was an arrangement between them whereby those mortgages were taken up, a deed made to Hamilton of the lot in Upper Alton, and this $2000 mortgage on the farm was given to Hamilton. Just how the amount of the $2000 was made up is confusedly and not satisfactorily explained. Mitchell states: "I had a settlement with Hamilton, and sold him the Upper Alton property for $750 and the chattels for $800. Whatever balance was due on the chattel property went in with the money (which he at the time got of Hamilton, not knowing how much,) to make the $2000." Mitchell and Hamilton agree that the Alton lot was taken at $750 and the chattel property valued at $800. The $1150 note, with the interest on it, amounted at the time, they say, to some $1500. The evidence is explicit that this $800, as the value of the personal property, was included in the $2000 mortgage, and it is just as explicit that Hamilton sold the personalty to John Mitchell,

the son of James Mitchell. Hamilton said that John had paid him at various times to the amount of $650, which he (Hamilton) paid to James Mitchell, as he promised at the time the property was turned over. It would seem, then, that this $2000 mortgage was too large by at least the amount of this $800, which should have been deducted from instead of included in the $2000. And if the mortgage was executed for too large a sum to protect the property from creditors, it would be fraudulent and void as to them. *Wooley* v. *Fry,* 30 Ill. 163; *Upton* v. *Craig,* 57 id. 259; Bump on Fraud. Con. (ed. 1872) 470.

Respecting the deed of James Mitchell to his brother, John Mitchell, it appears that the latter resided in Pennsylvania, and James Mitchell testifies the consideration was $2000 paid to him, and the deed was made subject to the mortgage of John Mitchell for $2000, that of Sweetser & Priest for $1000, and the mortgage Hamilton claimed to have of $2000. John Mitchell does not in the deed agree to pay the mortgages, but takes the land subject to them. The deed was made October 13, 1881. John Mitchell died in December, 1883. Ever since the making of the deed James Mitchell has continued to reside on the land, as before. As to how he came thus to reside on the place, he testifies: "I came to reside on the place through a verbal promise my brother made to my wife that she should not be disturbed in the place as long as he lived or owned the place." And as to the proceeds from the place, he says: "Certain proceeds came through my son, John, by an arrangement the old woman has to get certain proceeds of the place. There are no particular proceeds mentioned, and so far we have been getting what we needed through my son John, here, that's managing the place, whenever my wife or me wants a dollar. He has to let us have it, I understand, by instructions from his uncle, my brother." The son of James Mitchell, John Mitchell, who was living on the place with him at the time, testifies that

about the middle of October, 1881, the agent of his uncle, John Mitchell, made a verbal lease of the land to him; that he was to pay one-half a cent a bushel for all coal taken, and three dollars per acre for all cultivated land; that there was no specified time for paying rent. "The rent was to go to pay the indebtedness on the place, and to keep up the taxes and insurance—keep up the place until my uncle came around and we had a settlement." That his uncle had never been around since then, nor had he ever had a settlement with him; that he paid insurance, and paid Sweetser & Priest the interest regularly on their mortgage, but never paid Hamilton anything. It appears that over 200,000 tons of coal had been taken from the place since the making of the deed. John Mitchell left a will whereby he devised the land in trust, to permit his brother, James, and his present wife, during their lives and the life of the survivor, to use, occupy and enjoy the land free from all rent, and not be liable in any manner for the debts of his brother, and after his death and that of his wife, then in trust for the use of John Mitchell, elder son of James, and his heirs, charged with the payment by John to his sister, Margaret, of $500, and with the further payment by said John to the executors of the testator of such sum as his brother, James, should be indebted to him at the time of his death. The inventory filed of the estate of the testator showed no indebtedness to the estate of either James Mitchell or his son, John. All this manifests, very clearly, in our opinion, that notwithstanding the deed, James Mitchell was to have a secret use in the property; and if there was this secret trust connected with this conveyance, that James Mitchell was still to have the beneficial enjoyment, in whole or in part, of the property conveyed, this rendered the deed fraudulent and void as to creditors. *Power* v. *Alston,* 93 Ill. 590; *Moore* v. *Wood,* 100 id. 451.

There are other badges of fraud which might be commented upon, but the existence of a secret trust is so manifest that

we deem it unnecessary to advert to anything further. The transactions with Hamilton and John Mitchell we think reflect light upon each other, and finding one to be fraudulent as to creditors, casts suspicion upon the other as being of a like character.

Upon a careful examination of the whole testimony we are unable to say that the finding of the courts below against the validity of the deed and mortgages was not sustained by the evidence.

It is much pressed before us, that as the evidence upon which complainants' case depends comes from the defendants themselves, who were witnesses introduced by the complainants, the latter are bound by the testimony of their own witnesses—by what they said in favor of the conveyances as being for good consideration and in good faith; that they may not accept a part, and reject the rest of their testimony. A party may not discredit his own witness by direct impeaching testimony, but we are aware of no rule whereby one is bound by any testimony his own witness may give. The statement by a witness that a transaction was upon good consideration and all in good faith, is but a conclusion, and what he may deem honest and fair, the law may pronounce fraudulent as to creditors; and such statement is of little weight as against facts and circumstances which show the contrary. It is the facts and circumstances here in evidence which make the complainants' case, and they are entitled to the full force of the evidence arising therefrom by whosesoever witnesses the same may be shown.

It is objected there is no provision made in the decree as to homestead and dower rights in the land. There was no need for that. Those rights are not involved, nor in any way affected by the decree. When the sheriff comes to sell on execution, he can deal with the homestead as the statute directs he shall.

It is said the decree should have provided that any of the mortgagees could pay the amount of the judgment and costs. They may do this and avoid a sale, although the decree does not provide for it. The decree does not prevent this.

It is complained that the court below admitted improper evidence. The record shows that at the time of taking certain depositions the counsel for defendants objected thereto on account of the death of John Mitchell, in December, 1883, who died testate, and that his legal representatives should be made parties before taking any further proceeding. This was disregarded and the depositions taken. It is these depositions to which the objection is made. A supplemental bill was afterwards filed setting forth the death of John Mitchell, and his leaving a will, and making all interested under the will, parties. One of the depositions taken was that of Robinson S. Sawyer, one of the complainants, and the further objection was made to it that it was inadmissible against such of the defendants as under the supplemental bill were defending as executors and trustees and devisees under the will of John Mitchell, deceased. After the depositions had been taken, and after the defendants had been brought in under the supplemental bill, and had answered, there was a stipulation filed that the depositions which had been taken should apply to the defendants in the supplemental bill. This stipulation appears to us to obviate all the objection to the depositions. Defendants' counsel merely aver that it does not, without pointing out why not.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*