## Washington. Quinn et al.

### v.

## The People of the State of Illinois, for use, etc.

*Fraudulent Conveyances—Real Estate—Bill by Judgment Creditor to Set Aside—Necessary Averments in—Parties—Remedy at Law Need Not be Exhausted—Recognizance—Reinstatement of Criminal Case after Reversal by Supreme Court—Failure to Give Notice to Defendant—Averment in Sci. Fa. of Time and Place Where Defendant Required by Recognizance to Appear—Protection of Homestead in Order of Sale of Land Fraudulently Conveyed—To Whom Surplus to be Paid.*

1. Upon a bill in equity, filed by a judgment creditor to set aside as fraudulent a conveyance of land made by one of the judgment debtors and to subject such land to the lien of complainants' judgment, it was unnecessary to aver or prove the insolvency of the other judgment debtor or to make him a party to the bill, he having no interest in the land in question.

2. Where a party seeks to remove a fraudulent conveyance or incumbrance out of the way of his execution, he may file his bill for that purpose so soon as he has obtained his judgment. The conveyance being void as to him he has the right to place himself in the same position which he would have occupied had it never been made, and first seek his satisfaction out of the land thus fraudulently conveyed.

3. A bill of this nature is not strictly a creditor's bill, and the relief sought to be obtained by it does not require the averment or proof that the remedy at law was exhausted.

4. A recognizance, when taken, becomes a matter of record, and when the court taking it had jurisdiction of the offense charged it can not be assailed.

5. Where a recognizance is taken in open court, acknowledging an indebtedness to the people of the State of Illinois, and that recognizance is forfeited and *sci. fa.* issued and returned *nihil*, that return is equivalent to actual service.

6. Where a principal in a recognizance had been convicted of grand larceny and sentenced, and afterward the judgment was reversed by the Supreme Court and the cause remanded, and the order reversing and remanding filed in the Circuit Court, whereupon the cause was reinstated in the Circuit Court by direction of the state's attorney, and thereafter the prisoner and his counsel appeared and the recognizance in question was entered into in open court, *held*, that the fact that there was no notice given to the prisoner of the motion to reinstate the case in no way affected the validity of the recognizance, the filing of the final order reversing and remanding the case having conferred jurisdiction on the Circuit Court.

7. An objection on the ground that the writ of *sci. fa.* did not allege that by the terms of the recognizance the accused was required to appear before the court at any time or place, *held,* immaterial, because, first, such objection would not support a collateral attack on the judgment; second, there was an averment that the accused entered into a recognizance for his appearance at the next term of the Circuit Court of said county to be holden at the court house in said county, which was sufficient.

8. As the decree recognized the right of homestead, and directed the officer in making the sale to take such steps as were provided by law for setting it off, and did not assume to defeat the conveyance of it, it is not open to the objection that it set aside the conveyance of the homestead and forced it back on the defendant.

9. There was error in the decree in that it provided that the surplus arising on the sale, if any, should be paid to the defendant instead of to the grantee, to whom he had conveyed the land.

10. It was proper to decree that the money collected on the judgment should be paid to the state's attorney.

11. The fact that the land in question could have been levied on and sold without first attacking the fraudulent conveyance by this bill, does not bar the remedy in equity to first have the conveyance set aside.

[Opinion filed September 9, 1892.]

APPEAL from the Circuit Court of Jefferson County; the Hon. E. D. YOUNGBLOOD, Judge, presiding.

Messrs. ALBERT WATSON and GEORGE B. LEONARD, for appellants.

Messrs. A. W. LEWIS and WILLIAM H. GREEN, for appellees.

MR. JUSTICE SAMPLE. The appellees filed their bill in chancery against appellants to set aside certain deeds made by Washington Quinn to the other defendants.

It appears that one John Quinn was indicted by the grand jury of Saline County, for grand larceny. On the 19th day of March, 1888, he gave recognizance in open court for his appearance at the succeeding term, with Washington, James T. and George G. Quinn as his sureties. John Quinn not appearing at the following term of court,

his recognizance was forfeited and final judgment entered thereon on the 13th day of March, 1889, for the sum of $1,500 and costs. Thereafter executions were issued on said judgment and returned unsatisfied; whereupon proceedings were taken to set aside certain deeds, which it is alleged were filed of record after the entering into said recognizance, whereby Washington Quinn fraudulently conveyed his lands to certain of his children, all of whom, together with the wife of Washington Quinn, are made parties defendant.

The prayer of the bill is that said lands be made subject to executions to be issued on said judgment, or that the court decree that so much of said premises be sold as may be necessary to satisfy said judgment, and for general relief. A demurrer to the bill was overruled, and then answered by the defendants affirming the validity of the deeds. The answer further sets up as a defense that sufficient real estate had been levied upon to satisfy said judgment, and that there was no criminal charge of any kind presented against John Quinn, nor was there any record of any indictment having been returned in open court against him, upon which it is supposed he was required to give bail. Issue was joined and the cause heard by the court. Decree was entered in favor of the complainant, setting aside the deeds and directing the master in chancery to sell the lands to satisfy said judgment and costs, in case the same was not satisfied by payment by Washington Quinn within a certain time fixed in the decree; that said money should be paid by the master, in case of sale, to the state's attorney of Saline County, and the residue, if any, should be paid to Washington Quinn; that in making such sale the master should be governed by the rules applicable to such sales in dealing with the estate of homestead, which the court found to be in Washington Quinn, as to certain real estate that had been so fraudulently conveyed by him.

The defendants below prosecute their appeal and assign various errors. It is contended that the bill is bad on its face, because James T. Quinn, one of the sureties, was not made a party, and there is no averment of his insolvency,

and hence the remedy at law was not exhausted. He was not made a party defendant, because he had no interest in the land sought to be reached by this bill. It was not necessary to either aver or prove that he, or any of the other defendants were insolvent, in order to show the remedy at law was exhausted. In order to maintain a pure creditor's bill it is not necessary to aver more than the existence of a valid judgment and the return of an execution issued thereon unsatisfied in whole or in part. Sec. 49, Chap. 22, R. S.; Alexander v. Tams, 13 Ill. 221. The bill filed in this case is not, however, a creditor's bill in the strict sense of that term. It does not seek to compel the defendants to discover property. It avers the existence of real estate that belongs to the defendant judgment creditor, Washington Quinn, but which he fraudulently conveyed to defeat the collection of the judgment. It is a bill rather in aid of an execution, with an alternative prayer that the court, after removing the fraudulent conveyances so far as they affect the collection of the judgment, will direct by its decree the sale of the land, which is authorized by the case of Getzler v. Saroni, 18 Ill. 511–518. The difference between a creditor's bill, the purpose of which is defined by Sec. 49, Chap. 22, which, however, is itself but declaratory of the common law as to the equitable power of the court (Durand & Co. v. Gray, 129 Ill. top p. 16), and a bill in aid of an execution or to remove a fraudulent conveyance, is clearly recognized. Such bills are very different in their forms as well as purposes. Such distinction has been recognized in this State from the earliest decisions down to the present time, where the question has been raised.

The first case is that of Stone v. Manning, 2 Scam. 534. Quoting from Beck v. Burdett, 1 Paige Ch. R. 308, it is said: "There are two classes of cases where a plaintiff is permitted to come into this court for relief after he has proceeded to judgment and execution at law without obtaining satisfaction of his debt. In the one case the issuing of the execution gives to the plaintiff a lien upon the property, but he is compelled to come here for the purpose of removing some

obstructions fraudulently or inequitably interposed to prevent a sale on execution; the other case, the plaintiff comes here to obtain satisfaction of his debt out of the property of the defendant, which can not be reached by execution at law. In the latter case, his right of relief here depends upon the fact of his having exhausted his legal remedies without being able to obtain satisfaction of his judgment. In the first case, the plaintiff may come into this court for relief immediately after he has obtained a lien on the property by the issuing of an execution to the sheriff of the county where the same is situated, and the obstruction being removed, he may proceed to enforce the execution by a sale of the property, although an actual levy is probably necessary to enable him to hold the property against other execution creditors or *bona fide* purchasers. The same principle is recognized in Johnson's Chancery Reports, (2 Johns. Ch. 144, 296, 4 Johns. Ch. 677,) and numerous other English and American cases to which they refer." The next case is that of Miller et al. v. Davidson, 3 Gilm. 522, where it is said by Mr. Justice Caton: "Where a creditor seeks to satisfy his debt out of some equitable estate of the defendant, which is not liable to a levy and sale under an execution at law, then he must exhaust his remedy at law by obtaining judgment and getting an execution returned *nulla bona*, before he can come into a court of equity for the purpose of reaching the equitable estate of the defendant; and this is necessary to give the court jurisdiction, for otherwise it does not appear but that the party has a complete remedy at law." That is what may be strictly termed a creditor's bill. There is another sort of creditor's bill very nearly allied to this, yet where the plaintiff is not bound to go quite so far before he comes into this court, and that is where he seeks to remove a fraudulent incumbrance out of the way of his execution. There he may file his bill as soon as he obtains his judgment. In the case of Greenway v. Thomas, 14 Ill. 271, the same doctrine is laid down. In the case of Weightman v. Hatch, 17 Ill. 286, which in its facts was like the one under consideration on this point, in that it was averred in the bill

that executions were issued and returned *nulla bona*, and that defendant was insolvent, it was held that it was not necessary to aver in the bill or prove on the hearing that an execution had been issued and returned unsatisfied.

It is there again expressly reaffirmed that " where a party seeks to remove. a fraudulent conveyance or incumbrance out of the way of his execution, he may file his bill for that purpose so soon as he has obtained his judgment," and the case of Miller, *supra*, is cited. As a reason it is stated, p. 287, that " as to him, the conveyance being void, the creditor has the right to place himself in the same position which he would have occupied had it never been made, and first seek satisfaction out of this land. The grantee's title being tainted by fraud, he has no right to say that all other means to satisfy the debt shall be exhausted before he shall be disturbed in .his title. In this case, then, the complainant was not bound to issue any execution whatever. He was as much entitled to the relief asked without it as with it. It was an immaterial averment in the bill and not necessary to be proved at the hearing." See also Beach v. Bestor, 45 Ill. 346; Newman v. Willetts, 52 Ill. 98. In this last case it is said that such a bill as that filed in this case is not a creditor's bill in the sense in which that term is understood and accepted, and provision for which is made by sections 36 and 37 of our Chancery Code—now section 49. In Shufeldt v. Boehm, 96 Ill. 563, the language of Miller, *supra*, 3 Gilm. 518, is quoted with approval.

The right to file a bill immediately upon obtaining judgment in such cases, is based upon the fraud practiced, which lies at the foundation of equity jurisprudence; it is not based upon the statute. Philadelphia Fire Ins. Co. v. Central Nat. Bk. of Chicago, 1 Ill. App. 357. There are cases in this State that seem to militate against this view, but when condensed in the light of the facts involved, they either will be found to be consistent with the foregoing doctrine, or where inconsistent, *obiter dictum*. We hold then, that the relief sought to be obtained by this bill did not require either averment or proof that the remedy at law was

exhausted. The leading case cited by counsel for appellant on this proposition is that of Gore v. Kramer, 117 Ill. 176. In that case the complainant had not obtained judgment, and the primary object of the bill was simply to recover a debt, first canceling the contract of the sale of goods made by complainants ·to defendants, on the ground of fraud, and then obtaining a decree for the payment of the value of the goods. The other authorities cited are merely to the effect that the aid of a court of equity can not be invoked by a party who has an adequate remedy at law.

While this is true as a general rule, yet in this case a court of law was powerless to set aside the fraudulent conveyances, or remove a cloud upon the title, had the sale been made under the execution, which the judgment creditor would have had a right to do. Gould v. Steinburg, 84 Ill. 170; McKinney v. Farmers Nat. Bank, 104 Ill. 180.

In such case, however, the property would doubtless have been largely depreciated to the injury, not only of the creditor but also of the debtor, as men will not give a fair value for property which they know will involve them in a law suit. Lewis v. Lanphere, 79 Ill. 192.

The next ·point made is that the court had no authority to take the recognizance upon which the judgment was rendered, which judgment is the basis of these proceedings. The ground of this position is based upon the following facts: The principal in the recognizance, John Quinn, was convicted of larceny by a jury in the Circuit Court, and his term of imprisonment fixed at ten years in the penitentiary, upon which verdict he was sentenced by the court. On writ of error this judgment was reversed and remanded, as stated in this record, on account of improper remarks of one of the counsel for the prosecution. The final order reversing and remanding the cause was filed in the Circuit Court of Saline County on the 13th day of March, 1888. "And thereupon said cause was reinstated in said Circuit Court by direction of the state's attorney, and the following further proceedings had herein," is the language of the record, which order was made without notice for reinstatement. On the

19th day of March, 1888, the prisoner, with his counsel, appeared in court for the purpose of giving bail, which had been fixed at a former time at $800, when the state's attorney moved the court and obtained an order increasing the bail to $1,500. The prisoner thereupon, with the sureties heretofore mentioned, gave the usual recognizance in open court for that amount. It is earnestly insisted that the cause was not properly reinstated, and therefore the court had no authority to take the recognizance, and the judgment based upon it is void.

It will be noted that a recognizance when taken becomes a matter of record, and when the court taking it has jurisdiction of the offense charged, it can not be assailed. Bulson v. People, 31 Ill. 409–415. As held in the case of People v. Watkins, 19 Ill. 117, "The first fact is, was there a judgment of forfeiture? This can only be proved by the record. The judgment of forfeiture under our practice is not for a sum of money. On the entry by the clerk of the default of appearance of the principal, the next order is that a *scire facias* issue against him and his sureties, the office of which is to inform them that forfeiture has been entered, and requiring them to show cause why judgment should not be entered against them for the amount of the recognizance and execution to be levied, etc. This, when. entered of record, can not be averred against—it is truth itself." The recognizance was taken in this case in open court, acknowledging an indebtedness to the people of the State in the sum of $1,500; that recognizance was forfeited and *scire facias* issued, returned *nihil*, which, under the present statute, was equivalent to actual service (Petty v. People, 118 Ill. 148), and final judgment was entered. The defendants in the *sci. fa.* had their day in court, in contemplation of law, as fully as if they had been personally served. The record in this case shows that the indictment against John Quinn was pending in the Circuit Court at the time the recognizance was entered into, and that the final order of reversal and remandment of the case was then on file in that court.

If it be conceded that the court at that time did not have the right to proceed to try the cause, for want of notice of application for its reinstatement on the docket, it did, by the filing of the transcript of the final order in the trial court, of the reversal and remandment of the cause, obtain jurisdiction of the subject-matter of the suit. Austin v. Dufour, 110 Ill. 85. The court having such jurisdiction, under the authority of Bulson, *supra*, the court had a right to take the recognizance, and it mattered not how the prisoner appeared there; no matter, in the language of Mix v. The People, 26 Ill. 32, "had the prisoner come before the court whether in obedience to a writ of habeas corpus, or by a warrant issued by some officer, or whether brought before the court without such process, or by his voluntary appearance." It is not disclosed by this record with certainty, whether the defendant in the criminal proceedings was committed to the penitentiary during the time his writ of error was pending in the Supreme Court, and was on the reversal of the case returned by the warden to the county jail of Saline County, as provided by law, and as affecting the principle involved, it is not very material; only, if true, it would accent the danger of clothing the state's attorney with the power of keeping a prisoner in jail because he did not give notice for the reinstatement of the cause, when such prisoner was ready and able to give bail that would free him from imprisonment during the pendency of his cause; or if given by the other party, or either party for that matter, less than ten days before the day of adjournment of the court, then under the theory of appellants, the prisoner would have to lie in jail until the case could be reinstated at the next term of court, before giving bail. To give a construction to our statute that would lead to such results, would be violative of a fundamental right that could not be justified either in a court of law or conscience.

In this case the court had jurisdiction of the offense by express law, from the time the final order was filed. If as to the person it be conceded that the court did not have the right to proceed to trial, the case stood in effect like one

where an indictment has been returned into court by the grand jury. The court in such case can not proceed to trial until the defendant therein has been brought into court, or has appeared in court. We have never heard it questioned but that he might avoid arrest, by voluntarily appearing in open court, before such arrest, with his sureties, and there enter into recognizance in such sum as the court should fix, for his appearance from day to day and from term to term. This, of itself, would give the court jurisdiction of the person. No process need be issued and served upon him in order to obtain it in such case. We hold that the recognizance was properly taken in this case, and that the parties thereto can not under this record be heard to assail it.

It is next urged that the writ of *scire facias* does not allege that by the terms of the recognizance John Quinn was required to appear before the said court at any time or place.

In the first place such an irregularity would not defeat the judgment on a collateral attack, but in this position the appellants are in error as to the facts. It does aver that on the 19th day of March, 1888, he entered into the recognizance for his appearance at the next term of the Circuit Court of said county, on the first day thereof, etc., to be begun and holden at the court house in said county. This gives the time and the place. It is true the day of the opening of the court is not given, but that is not necessary. If the term is given and the date wrong, it will not vitiate. Every one must know a public law, which provides the day for the opening of court.

It is urged that it was error to decree that Washington Quinn alone should pay the judgment. The decree does not so provide. It is in the alternative that if he does not pay, that the land shall be sold.

The court could not require the other defendants to make such payment, as they were not parties to the judgment. Washington Quinn alone, was the only one of the judgment debtors who was made party defendant to this bill. The other sureties had no interest in the land decreed to have

been fraudulently conveyed. It was not necessary to decree that any one should pay the judgment debt. Notwithstanding it does not provide that the other parties who held the title to the land may pay the debt, yet they may do so if they desire and avoid a sale. The decree does not prevent them from paying it. Mitchell v. Sawyer, 115 Ill. 650, 658. It is urged that there is palpable error in setting aside the conveyance of the homestead, and forcing it back upon Washington Quinn, as claimed, against his will. The homestead consists of 120 acres, and its value is in excess according to the evidence of such an estate. It is true that his fraud did not prevent him from conveying it to whomsoever he pleased, as a fraud upon creditors can not be predicated upon an act that is not injurious to them. Leupold v. Krause, 95 Ill. 440; Gruhn v. Richardson et al., 128 Ill. 178; Moore v. Flynn, 135 Ill. 74. It is also true that it was not necessary for the court before passing a decree to set aside the homestead, but that could be left to the officer making the sale, as is expressly held in Ammondson v. Ryan, 111 Ill. 506–509, and Mitchell v. Sawyer, 115 Ill. 650–657, and the estate of homestead will rest where the grantor placed it.

The decree in this case recognizes the right of homestead and directs the officer in making the sale to take such steps as provided by law for setting it off and does not assume to defeat the conveyance of it or to force it back upon the grantor. This practice is recognized in the case of Cummings v. Burleson et al., 78 Ill. 281. It was proper to decree that the money collected on the judgment should be paid to the state's attorney of Saline County, who by statute is authorized to receive and receipt for the same. The position is not well taken that the levy of an execution upon real estate is *prima facie* a satisfaction, or shows, under the facts in this record, that there was a remedy at law, in the sense that it was a bar to this proceeding.

The theory of appellants in this appeal, that if there was a remedy at law for the collection of the judgment, or more strictly speaking, if an execution could have been levied upon property and that property sold, then this proceed-

ing can not be maintained, is entirely erroneous. The levy could have been made and this property sold before the fraudulent deeds were set aside, and then this bill filed to remove the cloud, as shown by the authorities heretofore cited; yet though that course might have been pursued, the complainants had the right to elect to pursue the course marked out in their bill here.

The decree is sustained by the evidence. In fact no point is made in the argument of appellants' counsel that it is not. It is, however, erroneous in one respect, in that it provides that the surplus on the sale, if any, shall be paid to Washington Quinn. He voluntarily parted with the title to this land, and as to him and his grantees the title is good, so that if there is any surplus, it should go to that party who has the title to the land out of which the surplus arises. The decree is otherwise affirmed.

The cause will be reversed and remanded, with directions to modify the decree in the respect above indicated.

*Reversed and remanded with directions.*