## Consolidated Stanley Mining and Milling Co. v. Isaac G. Loeber.

1. CHANCERY PRACTICE—*Bills Must Stand on Their Own Records.*— A bill for the appointment of a receiver is to be taken according to its own allegations and must stand or fall on its own record.

2. RECEIVERS—*Not to be Appointed Without Notice.*—It is the settled practice both in England and in America, to require the moving party in a bill for the appointment of a receiver to give due notice of the application, to the defendant, over whose effects he seeks the appointment of a receiver, in order that such defendant may have an opportunity to be heard in defense, and that his property may not be summarily wrested from him upon an *ex parte* application.

3. SAME—*The Rule as to Notice Inflexible.*—The rule of practice re-

quiring notice to a defendant before an application for the appointment of a receiver will be entertained, seems to be not a matter of discretion with the court, but an inflexible rule which the court is not at liberty to disregard.

4. PARTIES—*In Chancery.*—It is a rule universally recognized in courts of equity, that all persons are to be made parties to suits who have any substantial, legal or beneficial interest in the subject-matters of the litigation, and who are to be materially affected by the decree which may be rendered.

5. SAME—*Exception to the Rule—Parties.*—The only exception to the rule requiring all persons having an interest to be made parties to proceedings in chancery, is when the parties are very numerous, and so widely scattered that their names and residences can not be ascertained without great difficulty.

**Bill for the Appointment of a Receiver.**—Appeal from the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the October term, 1900. Reversed. Opinion filed July 11, 1901.

**Statement.**—This is an appeal from an interlocutory order appointing a receiver. The order was granted *ex parte* on a bill filed by appellee, without notice to any of the defendants. The bill was verified by appellee's affidavit, in the usual form, and was the only evidence heard. Appellant, the Salisbury Mining and Milling Co., James T. King and Charles A. Gehrmann were the only defendants. The bill was filed August 9, 1900, and on the same day and before service of process on, or appearance of, any of the defendants, the order appointing a receiver was entered.

The following, in substance, appears from the bill: The Consolidated Stanley Mining Co. (hereinafter called the Stanley Co.) was organized under the laws of this State in September, 1892, its object being to own and operate mines. Its capital stock is $500,000, divided into 50,000 shares of $10 each, and its office and principal place of business is in Chicago, Illinois. All of the stock, except 10,871 shares, which is held as treasury stock, is owned by thirty-four stockholders, who live in six different States, appellee being the owner of 1,000 shares. The corporation owns and has operated mining property known as the Plutus mine, at Idaho Springs, in the State of Colorado, in the improve-

ment of which, for mining purposes, the sum of $455,809 had been expended up to December 31, 1899, and the company had also expended, in the purchase of mining lands and property, about $302,929. Up to August 31, 1899, the total amount realized by the company for sales of ore was $369,529, and for sales of other material $4,078, and no dividends have been paid on the stock except two of five per cent each, one in December, 1895, and one in December, 1896. The business affairs of the company have been managed by nine directors, whose names and addresses are stated in the bill, among whom are the defendants King and Gehrmann. Samuel H. Cregar, one of the directors, died in July, 1900. The defendant Gehrmann was an original subscriber and has continued to be a stockholder, and until April, 1900, was manager in charge of the mining property and its operation. Appellant's mine has been operated by appellant in connection with the mine of the Salisbury Mining and Milling Co., which is adjacent thereto, the latter company having suspended active operations since the organization of appellant. At the annual meeting of appellant's stockholders, November 10, 1899, a majority of the stockholders authorized Gehrmann to negotiate for a sale of the mining property for $750,000, cash in hand; that previous to said date, complainant had made repeated efforts to inspect the books of the corporation, without avail, and at said meeting he was promised that he would have an opportunity so to do, but had no such opportunity till March, 1900, and even then only a partial opportunity; that January 19, 1900, Gehrmann wrote to complainant's attorney that parties had been at Idaho Springs since December 27th, examining with a view to purchase, with the understanding that they were to put up $100,000 in case the preliminary examination should be satisfactory, they then to have sufficient time for a final examination, which, if satisfactory, the $100,000 was to be paid at once, and the remainder within a reasonable time thereafter; that February 24th, Gehrmann again wrote as follows:

" The mine is now undergoing a final examination by the

experts and their principals, who are all here with me on the premises. Sufficient guaranty has been given, so if the examination proves favorable, the property will be accepted and deal closed. To complete the examination will likely take until March 15th or April 1st, that is, title and all. You can not force it, and must use both diplomacy and tact within reasonable time. I have no doubt but what a sale will be made so that we can call a stockholders' meeting early in April, to consummate and ratify it. Of course, all depends upon the result of this examination. This examination depends upon how we can bring them to look at it. I am using my best efforts and feel confident. It is, however, hard work and no fun about it."

That April 10, 1900, a meeting of the stockholders was called, at which a majority of the stock was represented, but because the same had not been properly called, and because of a protest by complainant, no business was transacted; but Gehrmann, at said meeting, presented a pretended agreement, a copy of which, marked "Exhibit A," is attached to the bill; that Bowden, the second party to said agreement, was, at the time of making the same, foreman of the mine, under Gehrmann, the manager, and wholly irresponsible; that complainant objected to the terms of the contract and pointed out that it was rather a leasing than a sale, etc.; that the contract, when presented, contained on it an assignment from Bowden to H. A. Frombach and Brownlee & Houghton, and an assignment from said assignees to Thomas H. Chisholm, of Montreal, Quebec, Canada; that May 14, 1900, at ten o'clock, A. M., in the city of Chicago, a stockholders' meeting was held to consider said contract, etc., which meeting had the contract under consideration that day and the next day, at which meeting complainant renewed his objection; that Gehrmann, at said meeting, stated that he had, by direction of King, the company's president, put Chisholm in possession of the mining property, and that he had been in possession since April 1st; that $50,000 of the purchase price had been paid to the treasurer of the company, and the further sum of $100,000 had been deposited in the First National Bank of Denver, Colorado, which latter sum was to be used by

the purchaser in erecting a concentrating mill on the prop-
erty, so that, in case the sale went through, the company
would receive only $50,000, instead of $750,000; that Gehr-
mann further stated that he had resigned as manager of the
Stanley Company and was acting as manager of a corpora-
tion about to be organized by or on behalf of Chisholm, and
that the mill would be erected under his, Gehrmann's, super-
vision, etc.   Complainant charges that said pretended con-
tract is   fraudulent and void, and that the conduct of
Gehrmann and King was fraudulent and void, etc., and
avers that contract Exhibit A, was informally repudiated by
the stockholders at the last mentioned meeting, and they
refused to consider it; that thereupon a committee was
appointed and reported a draft of an agreement, which draft
having been discussed, and one Duclos, Chisholm's attor-
ney, who was present at the meeting, having stated that
Chisholm would sign the same, said draft was adopted, and
King, the president, was authorized to procure Chisholm's
signature thereto, and to sign the same himself, on behalf
of the Stanley Company.   A copy of said draft of contract
marked "Exhibit B," is attached to the bill.   Complainant,
on information and belief, avers that King executed said
contract and delivered it to Duclos, to procure Chisholm's
signature, but that Chisholm refused and still refuses to
execute it, and that neither King nor the board of directors
has taken any steps to compel Chisholm to execute it, or to
regain possession of the mining property; that said prop-
erty remains in Chisholm's possession and is liable to be
wasted, etc., unless a receiver is appointed.   Complainant
avers that at the meetings in April and May, 1900, a major-
ity of the directors were present, and cognizant of the fore-
going facts, and that no steps have been taken to set aside
said contract, Exhibit A, or to regain possession of said
property, and charges "that by reason of the neglect of
said president and said board of directors and said man-
ager of the business and interests of said corporation, the
said officers and board of directors have been guilty of a
breach of trust, and are guilty of a continued breach of

trust, and that they have shown themselves grossly incompetent to manage the affairs and business of said corporation; and your orator charges that unless the control of said corporation is taken out of the hands of said officers and board of directors and put in the hands of a receiver to be appointed by this honorable court, the rights of your orator as a stockholder in the premises will be unduly prejudiced if not entirely dissipated and wasted."

Complainant avers that, at the May meeting, a stockholder and member of the board of directors offered a resolution to the effect that the stockholders had continued and unlimited confidence in the fidelity and trustworthiness of Gehrmann, which was adopted by the unanimous vote of all the stockholders present, except complainant, who remained silent; and complainant charges that the directors present and voting for said resolution, thereby showed themselves unfit and incompetent, etc., to manage the affairs of the company. Complainant, on information and belief, avers that the property of the Salisbury Company is controlled by the Stanley Company under some agreement, the details of which are unknown to complainant, and that the contract, Exhibit B, was satisfactory to the Salisbury Company. Avers that complainant has frequently requested King to take steps to regain and recover possession of the mine and property, which requests King has ignored, and that complainant has made similar requests of at least three of the board of directors. The bill prays:

" That an account may be had and taken of the various transactions of the officers and the manager of said corporation from the organization thereof to the present time; that the books, records, vouchers and cash of said corporation be turned over to said receiver; that the said receiver may be directed to proceed and sell the property and assets of said corporation, and wind up the said corporation and distribute the proceeds among the stockholders, according to their several and respective rights and interests, and that the said Gehrmann and King may be held liable to make good any deficiency or loss which said company may sustain by reason of the fraudulent conduct of said Gehrmann

in entering into said lease and putting the said Chisholm in possession of said mine. And that your orator may have such other or further or different relief in the premises, as the nature of his case may require, and as to equity shall seem meet."

Exhibit A, referred to in the bill, is in part as follows:

"This agreement, made and entered into this 10th day of February, 1900, by and between the Consolidated Stanley Mining and Milling Company, a corporation existing under the laws of the State of Illinois, and doing business in the county of Clear Creek, State of Colorado, and the Salisbury Mining and Milling Co., a corporation incorporated and organized under the laws of the State of Colorado, parties of the first part, and James E. Bowden, of the county of Clear Creek, State of Colorado, party of the second part,

Witnesseth : That the parties of the first part, in consideration of the promises hereinafter mentioned, and of the covenants and agreements hereinafter contained to be made, kept and performed by the said party of the second part, have agreed to sell and do hereby agree to sell unto the party of the second part the following described property situated in the Spanish bar mining district, county of Clear Creek, State of Colorado, to wit:

The Hukill Lode Mining Claim, survey lot No. 615; also 126, 191, 290, 850A, 1235, 5411, 6461, 6618, 9096A, 9066B, 289, 2316, 409, 190B, 350, 9090, 671, 1031 and a part of survey lot No. 1202, 1279, 6259, 6916 and 871, together with all water rights, ditches, dams, flumes, pipe lines, mills, mill buildings, hoisting plant, condensor plant, and all other buildings and machinery on said premises. The price to be paid for said described property to the party of the first part by the party of the second part is the sum of $750,000, to be paid as follows, to wit:

The sum of $50,000 on the date of this instrument.

$100,000 on or before the 2d day of April.

$200,000 on the 11th of February, 1901.

$200,000 on the 10th of August, 1901.

$200,000 on the 10th of February, 1902.

And time shall be the essence of this contract as to said payments; and upon payment of the sum of $750,000 at and within the time aforesaid, the said parties of the first part will at their own cost and expense make and execute to the said party of the second part or such person or company as he may designate, a good and sufficient deed or deeds to

said premises, conveying the same clear and free of incumbrance, and to this end the parties of the first part hereby agree to deposit in escrow with the First National Bank of Denver, Colorado, an abstract of title to the property, together with the deeds thereof, with instructions for delivery of the same to the party of the second part upon the payment of the sum of $750,000.

The said parties of the first part agree that, upon the receipt of the first two payments of $50,000 and $100,000, respectively, they will place the said party of the second part in the peaceable possession of the above described property, with the right and privilege of mining ore therefrom and operating the mill or mills thereon upon the following terms and conditions, to-wit:" (Here follow a number of conditions imposed on the purchaser as to the care and management of the property.)

The consideration expressed in draft of contract Exhibit E, referred to in bill, which purports to be between the corporations above named, parties of the first part, and Thomas Chisholm, party of the second part, is " $650,000," as follows :

$75,000 on execution of contract.

$125,000 on or before July 15, 1900.

$125,000 on or before September 15, 1900.

$250,000 on or before January 15, 1901.

It will be observed that the sum of the payments mentioned is only $575,000, instead of $650,000.

By Exhibit B, Chisholm is required to erect on the property, at his own expense, " a modern concentrating mill, of sufficient capacity and suitable for the practical and economical concentration of the concentrating ore product of the property."

With the exceptions mentioned, there is no substantial difference between the terms of contract Exhibit A, and draft of contract Exhibit B.

The court appointed the Chicago Title and Trust Company receiver of the property. The order of appointment contains the following :

" The said receiver will immediately take possession of all the said property, and it is hereby authorized to bring any suit or suits at law or in equity necessary or proper for

the recovery or reducing to possession or collection of any of the property or assets of the said corporation, and to use the name of said corporation in bringing such suit or suits whenever necessary or proper, and it will report its doings from time to time to this court for its approval, and it will make such disposition of the property of said corporation as this court shall from time to time order and direct.

The said corporation is hereby ordered and directed to cause its officers to deliver to said receiver all its books of account, money, bills receivable, choses in action and other property covered by this order."

The court certifies, among other things, that the order appointing the receiver was made solely on the bill, without other evidence, and on the *ex parte* application of the complainant, and that defendants did not appear, by counsel or otherwise, on the hearing of the motion.

SCOFIELD & BROWN and SCOFIELD & McMAHON, attorneys for appellant.

KERR & BARR, attorneys for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

Appellant's counsel contend that the appointment of a receiver without notice was error; that Thomas J. Chisholm is a necessary party, and that the facts alleged in the bill do not warrant the appointment of a receiver. The only answer of appellee's counsel to the point that the receiver was appointed without notice is, that subsequently to the appointment of the receiver on the bill before us, the same receiver was appointed for the property in question on a supplemental bill, which is not contained in the transcript of the record in the present case, and which is certified to be a complete transcript. We can only look to the record in the present case. Each case must stand or fall on its own record. There is no emergency shown by the bill, or the verification of it by complainant's affidavit to excuse the want of notice to the defendants. The bill was filed August 9, 1900, and sum-

mons was issued the same day, and the sheriff's return shows that it was served the next day, August 10, 1900, on the Stanley Company, the Salisbury Company, James T. King and Charles A. Gehrmann, evidencing that they were within the jurisdiction, and could easily have been served with notice.  If the sheriff could find them, as it appears he easily did, appellee might also have found and served them with notice.    Section 3 of the statute in reference to injunctions, provides:

"No court, judge or master shall grant an injunction without previous notice of the time and place of the application having been given to the defendants to be affected thereby, or such of them as can conveniently be served, unless it shall appear, from the bill or affidavit accompanying the same, that the rights of the complainant will be unduly prejudiced if the injunction is not issued immediately or without such notice."

The appointment of a receiver, without notice, with such powers as are conferred on the receiver by the order appealed from, is a much more serious matter than the granting a temporary injunction.  In the latter case action is merely enjoined, while in the former the defendant may be summarily dispossessed of his property.    High, in his work on Receivers, says:

"It may be stated as the settled practice, both in England and America, to require the moving party to give due notice of the application to defendant, over whose effects he seeks the appointment of a receiver, in order that he may have an opportunity of being heard in defense, and that his property may not be summarily wrested from him upon an *ex parte* application."    High on Receivers, 3d Ed., Sec. 111, citing numerous cases.

The same author says:

"The rule of practice thus stated, requiring notice to a defendant before an application for a receiver will be entertained, would seem to be not a matter of discretion with the court, but an inflexible rule, which the courts are not at liberty to disregard."    Ib., Sec. 112.

We are of opinion that the appointment of the receiver without notice to the defendants was an error sufficient

of itself to warrant a reversal. The next question is whether Chisholm is a necessary party to the suit. It appears from the bill that Chisholm has paid $50,000 on the contract Exhibit A, which sum of money is in the treasury of the Stanley Company, and also that he has deposited $100,000 in a bank in Denver, Colorado, to the credit of Gehrmann, the former manager and a director and stockholder of the Stanley Company, as security for and to be used in the erection of a concentrating mill on the property, and that he, Chisholm, has been, since April 1, 1900, and now is in possession of the property, claiming to be the owner thereof. The order appointing the receiver authorizes him to take possession of all the mining property, describing it, and all other property of the Stanley Company, and to bring such suits as may be necessary to that end. The bill prays that the receiver be directed to sell all the property and assets of the company, etc. In view of these circumstances, we think it clear that Chisholm is a necessary party to the bill. No final disposition of the property can be made on the hypothesis of complainant that the contract Exhibit A is fraudulent and void, which will not materially affect Chisholm's rights in the premises.

In Whitney et al. v. Mayo, 15 Ill. 251, 254, the rule is thus stated :

" The general rules in equity require all persons materially interested in the subject or object of the suit, however numerous, to be made parties, complainants or defendants, that all may be provided for, and protected by the decree. Story, Eq. Pl., Sec. 72, *et seq.;* Hill on Trustees, 519; 2 John. C. R. 239; Greenup v. Porter et al., 3 Scam. 65; Scott v. Moore et al., Ib. 315; Willis et al. v. Henderson, 4 Ib. 20; Spear v. Campbell et al., Ib. 426; Montgomery v. Brown, 2 Gilm. 581; Hoare v. Harris, 11 Ill. 24; Webster v. French, 12 Ill. 302. To these rules there are exceptions, but no suggestion or averment in this bill presents a case for dispensing with the other communicant members of this congregation. There is no averment that they are out of the jurisdiction, nor are we prepared to say that an exception to the rule is predicable here upon that ground, under our statute providing for service on non-

residents by publication, or by delivery of copies and notice. Rev. Stat. 1845, p. 94, Secs. 8–12. And the remark may equally apply to 'unknown persons,' who may also be sued and served under the statute, and whose interests are equally bound by a decree."

In Baker et al. v. Adm'r of Backus, deceased, 32 Ill. 79, a receiver was appointed the day the bill was filed, and the Crystal Lake Ice Co., whose property the receiver was authorized to take possession of, was not a party to the bill. The court after citing cases, say :

" The necessary implication from all these is, a suit being necessary, and the receiver appointed for all parties to it, that he whose property is to be taken from him and placed in the power of a receiver, should be a party to the pending suit. We think it indispensable that he should be a party, that he may resist the application, the granting of which may work to him irretrievable injury."

The court further say :

" A receiver is not usually appointed unless fraud is clearly proved by affidavit, or when it is shown that imminent danger would ensue if the property is not taken under the care of the court before an answer is put in. There must be a strong special ground to induce the court to interfere in this way before an answer. (Id. 10; referring to Middleton v. Dodswell, 13 Vesey, 266; Bloodgood v. Clark, 4 Paige's Ch. 574.) When a default is entered the rule would doubtless be to require affidavit, before the property shall be taken out of the custody of its true owners. In every view in which we can regard these cases, we are compelled to say that in the first, the company not having been made a party, the decree depriving them of their property and franchises was void and of no effect, and the decree must be reversed and the bill dismissed." Ib. 115–116.

In Spear v. Campbell, 4 Scam. 424, the court say :

" It is a rule universally recognized in courts of equity that all persons are to be made parties to the suit who have any substantial, legal or beneficial interest in the subject-matters of the litigation, and who are to be materially affected by the decree which may be pronounced."

In Prentice v. Kimball, 19 Ill. 320, and Smith v. Rotan, 44 Ib. 506, the court say that the only exception to the rule

is when the parties are very numerous and so widely scattered that their names and residences can not be ascertained without great difficulty.

Numerous other cases might be cited in support of the rule. In the present case the bill states that Thomas J. Chisholm resides in Montreal, Quebec, Canada, and he might have been made a party and served by publication, as prescribed by section 12, or by copy of the bill, as prescribed by section 14 of the chancery act. As has been said, any decree which may finally be rendered on the theory of the bill, that the contract is fraudulent and void, must materially affect Chisholm's interest. Indeed, we can not conceive of any ultimate relief in respect to the mining property which would not affect his interest. Therefore he is a necessary party to the bill, and the order appointing a receiver, he not being a party, was erroneous.

Appellee's counsel say that the bill is not filed under section 25 of the incorporation law, and it is clear that, on the allegations of the bill, no relief can be had under that section. The question whether the relief sought can be had under the general equity powers of the court, we will not consider in the present case for reasons hereinafter stated.

Counsel also say that they do not seek a dissolution of the Stanley Company; this, although the bill specifically prays that the property of the company be sold, the proceeds of the sale distributed and the corporation wound up. What, then, does the complainant want? If the relief sought is the decreeing the contract with Chisholm void and the recovery of possession of the mining property, which, if we understand the argument of appellee's counsel, they claim, then Chisholm is vitally interested and should be a party, that he may contest the allegation that the contract is void and defend his possession under it.

Appellee's counsel suggest in argument that after the present appeal was perfected a supplemental bill was filed in the cause, and that an order was entered on said supplemental bill appointing the same receiver, from which last mentioned order an appeal is pending in this court, and we,

having ascertained from the record of the last mentioned appeal that the supplemental bill alleges facts not alleged in the original bill, which is the only bill in the record now before us, think it inexpedient to decide the question whether the facts in the original bill are sufficient to warrant the appointment of a receiver.

For the errors indicated the order of August 9, 1900, appointing a receiver, will be reversed.