## Peter H. Anderson et al. v. Nels O. Hultberg et al.

### Gen. No. 11,860.

1. INJUNCTION PENDENTE LITE—*when stay order preferable to.* It is suggested in this opinion that in many instances a temporary stay order or restraining order, expiring at some definite time set for the hearing of the application for a formal injunction *pendente lite*, might serve the purpose equally with the granting of an indefinite injunction in the first instance, and accordingly be better practice.

2. INJUNCTION PENDENTE LITE—*granting of, without notice, sustained.* Held, under the particular facts shown in the bill, that the granting of an injunction restraining the transfer of property by the defendants was not an abuse of the discretionary power of the court.

3. INJUNCTION—*where improper breadth of, should be complained of.* Where it is complained that the scope of an injunction is too broad and its operation too drastic, an application for modification should be made to the court which granted it.

4. RECEIVER—*when appointment of, without notice, proper.* It is only in cases of exceptional occurrence and emergency that the appointment of a receiver without notice is proper.

5. RECEIVER—*appointment of, without notice, sustained.* In this

case a receiver was appointed in a proceeding commenced by creditor's bill, without notice to the defendant, and such appointment is sustained, the court intimating that notwithstanding the strong allegations of the bill, such appointment would not have been justified had the defendant, instead of being an individual, been a going business concern.

6. Receiver—*when order appointing, may be made.* An order appointing a receiver and requiring the complainant in a cause to give bond as required by statute, may be entered simultaneously, and the appointment of the receiver need not be deferred until such bond has been actually executed and filed.

7. Receiver—*by whom amount of bond given upon appointment of, to be determined.* The amount of the bond to be given by the complainant obtaining the appointment of a receiver is a matter resting in the discretion of the court, and complaint with respect thereto should be made to it.

8. Receiver—*nature of bond given by complainant upon appointment of.* The bond given by a complainant obtaining the appointment of a receiver does not take the place of or secure the receiver's responsibility and liability on his bond or otherwise for property coming into his hands, but is for the damages resulting and attorney's fees incurred by the appointment and acts of the receiver, if the appointment is revoked or set aside.

9. Receiver—*to whom complaint as to condition of bond given upon appointment of, should be made.* Where the bond given by a complainant obtaining the appointment of a receiver is claimed to be defective and not in compliance with the statute, the remedy is not by appeal but by application to the appointing court.

10. Return Nulla Bona—*when, insufficient to sustain creditor's bill.* A return *nulla bona* made by direction of the complainant's attorney without any reasonable effort by the sheriff to collect the execution from the legal assets of the defendant is not sufficient to sustain a creditor's bill.

11. Return Nulla Bona—*when, sufficient to maintain creditor's bill.* A return *nulla bona* is sufficient where the sheriff has made proper and unavailing efforts to collect the execution, notwithstanding such execution may not have been held by him during the entire term of its life.

12. Return Nulla Bona—*when, not essential to maintain bill in nature of creditor's bill.* A bill in aid of execution is in the nature of a creditor's bill and may be maintained notwithstanding an execution has not been returned *nulla bona*, and there is no distinction in this regard between a case where the judgment debtor has fraudulently conveyed land and one in which he has with his own funds purchased land and fraudulently placed it in the name of another.

Appeal from an interlocutory order appointing a receiver and granting injunction. Appeal from the Circuit Court of Cook County; the Hon. Frederick A. Smith, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed November 28, 1904.

**Statement by the Court.** This is an appeal from an interlocutory order of the Circuit Court of Cook county, entered July 1, 1904, granting, until further order of said Circuit Court, certain injunctions against the appellants and others, and appointing a receiver of all the property and estate of Peter H. Anderson exempt from execution, also of certain described real estate, and the rents, issues, income and profits thereof, which real estate, by the bill of complaint in said cause, is alleged to consist of certain lots in Cook county, Illinois, with a large flat or apartment house thereon, producing large rents. Said bill also alleges that this real estate, with other pieces of real property outside of Illinois, Peter H. Anderson, the principal defendant, had purchased with funds claimed to have been property of the complainants, as hereafter detailed, and caused to be conveyed to his wife and co-defendant, Frideborg A. Anderson, under the pretense that the same was her separate estate and individual property.

This bill, on which these injunctions were granted and this receiver was appointed, was brought by Hultberg and the Swedish Evangelical Mission Covenant, an Illinois corporation, against Peter H. Anderson, Frideborg A. Anderson, his wife, and various other defendants, and sets up an agreement between Hultberg, acting for himself and as successor in title to and representing the interest of the Swedish Evangelical Mission Covenant, for a certain arbitration of matters in difference between himself and the said Mission Covenant, on the one side, and Peter H. Anderson and others on the other, respecting the title to, and the proceeds of, a certain mining claim. It sets up, also, the award of the arbitrators, a part of which was a finding that Hultberg was entitled to recover $232,200 from Peter H. Anderson. It further alleges a decree of the Circuit Court of Cook county, entered June 13, 1904, in a cause in which it had jurisdiction of the parties and subject-matter, finding that the award was in all respects valid and binding on the parties, and ordering "that said Peter H. Anderson forthwith pay to said Nels O.

Hultberg the sum of $232,200, with interest thereon at the rate of five per cent per annum from the 13th day of April, A. D. 1904, and that in default of such payment execution issue therefor in favor of said Nels O. Hultberg and against said Peter H. Anderson, and that said Nels O. Hultberg be also at liberty to apply to this court for such other and further orders in the premises as may be necessary or proper to compel the payment by said Peter H. Anderson of the amount so required to be paid by him to said Nels O. Hultberg." The bill in this cause then recites that on June 15, 1904, execution for $232,200, issued for this amount in favor of Hultberg v. Peter H. Anderson, and was on that day delivered to the sheriff; that the sheriff on June 30, 1904, returned said execution wholly unsatisfied, and that the decree is unsatisfied.

After the usual allegations of a creditor's bill, according to the information and belief of complainants, as to beneficial or other interests owned by Peter H. Anderson in the possession and control of other parties, the bill makes specific allegations summarized as follows:

That complainant Hultberg's claim was for the profits of a mine in Alaska known as " No. 9 Above on Anvil Creek," from October, 1898, to the date of the award above described, on April 13, 1904; that Peter H. Anderson had received and wrongfully converted these proceeds; that Peter H. Anderson obtained the title to this placer mine " No. 9," etc., in trust for the covenant; that aside from the proceeds of said mine and the property acquired by means thereof, and aside from certain other mining claims and placer mines in Alaska and the proceeds thereof, which proceeds did not exceed the sum of $80,000, said Anderson never had any resources or means, and that all other property acquired by him subsequent to the location of " No. 9 " was acquired by him by the wrongful use of the proceeds of " No. 9; " that immediately after determining fraudulently to convert these proceeds, he purchased and caused to be conveyed to Frideborg A. Anderson, his wife, the real estate in Cook county above described, and certain other real estate in

Dickinson county, Kansas; that thereafter, out of said proceeds, he paid over to his said wife, Frideborg, large sums of money, in amount unascertained, which she now claims as her own; that the said Frideborg A. Anderson never had any means of her own otherwise than through Peter H. Anderson's wrongful use of the proceeds of said "No. 9;" that all transfers of property ever made or caused to be made by said Peter H. Anderson to Frideborg A. Anderson were gifts from him to her without any valuable consideration; that from the location of the said mine "No. 9" to the making of the award on April 13, 1904, Peter H. Anderson was insolvent, and during all said time the property owned by him, together with that conveyed, as alleged, fraudulently, to Frideborg A. Anderson, was insufficient to pay the amount due complainant; that all such conveyances made or caused to be made by Peter H. to Frideborg A. Anderson were made fraudulently and for the purpose of hindering and delaying creditors, and particularly complainants, in the collection of the said claim; that in April, 1904, after the making of the award, Frideborg A. Anderson and Peter H. Anderson executed and delivered to the Chicago Title and Trust Company a trust deed of the said real property in Cook county, to secure said Frideborg A. Anderson's note for $40,000, and that said trust deed and note were executed and delivered further to hinder and delay the creditors of Peter H. Anderson, especially the complainants, and in pursuance of a conspiracy between said Frideborg A. and Peter H. Anderson, to hinder and delay complainant Hultberg in the collection of the decree above described.

The bill further alleges as to Frideborg A. Anderson (in whose behalf this appeal, taken by her and Peter H. jointly, is most strongly pressed) that on the property in Cook county, before described, (lots four (4) and five (5) in Lundgren's subdivision, etc.) there is a large flat or apartment building of great value, of which Peter H. and Frideborg A. Anderson are receiving the rents, amounting to a large sum, instead of applying the same towards a satis-

faction of the decree, and that complainants have reason to fear, and do fear, that said Peter and Frideborg will, unless enjoined, sell, convey, encumber, or otherwise dispose of said property so as to prevent its application towards the decree, and that unless a receiver of the rents, etc., of said property be appointed, they will collect and so dispose of the same as to prevent the application thereof to the satisfaction of the decree.

The bill further alleges, on information and belief, that Peter and Frideborg Anderson are renters of a deposit box in the Chamber of Commerce Vault Company, in which they have a large amount of money and securities which ought to be applied to the satisfaction of said decree, and that if any portion of it is claimed by Frideborg A.. Anderson as her separate property, the portion so claimed was given to her by Peter Anderson out of the proceeds of said mine No. 9, and that such gift was fraudulent against complainants.

There are further allegations that the land in Dickinson county, Kansas, ought to be applied to the satisfaction of the decree, and that complainants fear, and have reason to fear, that unless enjoined, Peter H. and Frideborg A. Anderson will dispose of the same for the purpose of preventing the application thereof to the payment of the decree.

It is also represented, on information and belief, that Frideborg A. Anderson has on deposit in a certain bank in Sweden over ten thousand dollars, given to her without consideration by her husband, Peter, out of the proceeds of mine No. 9, and which ought to be applied towards the satisfaction of said decree, but which the complainants fear, and have reason to fear, said Frideborg will withdraw and dispose of so as to prevent its application to the payment of the decree.

Besides these allegations of the bill directly affecting Frideborg A. Anderson, there are statements on information and belief, that Peter H. Anderson is the owner of a large amount of the capital stock of the Brazilian Diamond, Gold & Developing Company, and of fifty shares of the

capital stock of the State Bank of Chicago, and that he has money on deposit in that bank, and that complainants fear that he will dispose of said stock and money on deposit so as to prevent their application to the satisfaction of the decree, unless enjoined from doing so.

There are also allegations in the bill concerning the organization of certain corporations known as the White Star Mining Company of California and the White Star Mining Company of Illinois, and the transfer to them successively of the title to mine No. 9 and its proceeds, which allegations, as they are of more importance in the appeal from this decree, hereafter to be disposed of, of the White Star Mining Company, than in the one of the Andersons' now under consideration, we will not detail at length here.

The bill was verified by Nels O. Hultberg in the usual form. By amendment, also so verified, made by leave of court on the day (July 1, 1904,) on which the original bill was filed, it was alleged that on June 14, 1904, prior to the issuance of the execution heretofore mentioned, and to prevent service upon him of such execution, Peter H. Anderson departed from Cook county and has not since returned to Illinois; that since the issuance of said execution the sheriff has made all possible efforts, but has not been able to ascertain said P. H. Anderson's whereabouts, nor any information thereof, nor find any property belonging to him subject to execution; that the sheriff twice called at said Anderson's usual place of abode to make a demand of payment; that since the making of the award Peter H. Anderson has been engaged in making fraudulent conveyances and dispositions of his property, to hinder and delay complainants in enforcing payment of said decree, and that by reason of such fraudulent disposition it is impossible for the sheriff by means of said execution to collect any portion of the decree, and that if the sheriff had retained the execution without returning it until ninety days after its date, such retention would have enabled Peter H. Anderson to so fully and completely dispose of his property and assets as greatly to imperil, if not totally destroy, all chance of complainants enforcing collection of the said decree.

The prayer of the bill, besides asking the usual discovery and the ultimate application to the satisfaction of the de· cree for $232,200 described in the bill of any property belonging to Peter H. Anderson, or in which he has any beneficial interest, including by particular description the real property alleged in the bill to be in Frideborg A. Anderson's name, but alleged to have been acquired by her through money or property furnished by Peter H. Anderson, asks for injunctions against Peter H. Anderson, against the Brazilian Diamond Co., the State Bank of Chicago and other defendants, and also asks for one, until the further order of the court, against Frideborg A. Anderson, restraining her from disposing of or encumbering in any manner the real estate above described in Illinois and in Kansas, or any other property, real or personal, wheresoever situated, which she acquired directly or indirectly through means furnished by Peter H. Anderson, and from removing from any safe deposit box any money or securities, or taking any such property beyond the jurisdiction of the court, and from withdrawing from any bank anywhere any money in such bank to her credit, or from disposing of any promissory note secured by any deed of trust executed by her. It also asks for the appointment of a receiver of all the property of Peter H. Anderson, and also a receiver of lots four (4) and five (5) in Lundgren's subdivision, etc., "to take and collect the rents, issues and profits thereof" until the further order of the court, and also to take possession of all other property, real and personal, of whatsoever kind and nature, within the jurisdiction of the court which said Frideborg A. Anderson has received or acquired directly or indirectly through money or property furnished by said Peter H. Anderson, and to hold the same subject to the further order of the court.

The affidavit of Nels O. Hultberg, the complainant, to the bill, contained the allegation that the rights of the complainant would be unduly prejudiced if the writs of injunction prayed for in the bill were not issued immediately and without notice to the defendants.

In accordance with the prayer of the bill as above set forth, and in the terms as prayed, injunctions until the further order of the court were, on the day the bill was filed, July 1, 1904, ordered against Peter H. Anderson, Frideborg A. Anderson and the other defendants, upon a bond of $5,000 from the complainant. By the same order the Equitable Trust Company was appointed receiver to take possession of all the property of Peter H. Anderson and the said lots four (4) and five (5) in Lundgren's subdivision, etc., and the rents, issues, incomes and profits thereof, "upon the complainant, Nels O. Hultberg, executing a bond in the sum of one thousand dollars, with Swan A. Matson and Charles G. Peterson as surety, conditioned to pay all damages, including reasonable attorney's fees sustained by reason of the appointment and acts of such receiver in case the appointment of such receiver is revoked or set aside." Peter H. Anderson and Frideborg A. Anderson are ordered to assign and attorn to said receiver, and to appear before a master in chancery to submit to an examination. The receiver is given power to make leases of the real estate for terms not exceeding one year.

From this interlocutory decree Peter H. Anderson and Frideborg A. Anderson, as above set forth, jointly appealed, as allowed by statute, and have assigned numerous errors.

HEALY & CAYLOR, for appellants.

WINSTON, PAYNE & STRAWN and HARRIS F. WILLIAMS, for appellees.

MR. JUSTICE BROWN delivered the opinion of the court.

To our mind the most serious objection made to this interlocutory order is that it was entered without notice to the appellants, especially that it was so entered without notice to the appellant Frideborg A. Anderson. Chapter 69 of the Revised Statutes of Illinois, section 3, provides that "No court, judge or master shall grant an injunction without previous notice of the time and place of the application having been given to the defendants to be affected thereby,

or such of them as can conveniently be served, unless it shall appear from the bill or affidavit accompanying the same, that the rights of the complainant will be unduly prejudiced if the injunction is not issued immediately and without notice." Although this statute by its terms recognizes the right and propriety of a chancellor in some cases and under some conditions granting injunctions without notice, it is equally plain from its terms that the legislature intended by it to safeguard defendants in litigation from what it deemed a power of courts of chancery often dangerous and liable to grave abuse. It may well be doubted whether the cases are not much fewer than the general practice of such courts would seem to indicate, where notice can be properly dispensed with before the injunctional order is issued. And it is very probable that in many cases, also, where immediate action seems necessary in an emergency to preserve existing conditions, a temporary stay or restraining order, expiring at some definite time set for the hearing of the application for the formal injunction *pendente lite*, might serve the purpose equally with the granting of such an indefinite injunction in the first instance. Even more is extreme caution necessary in determining an emergency sufficient to warrant the appointment of a receiver without notice. Only in cases of exceptional occurrence and emergency is this proper or justifiable. To this doctrine this court is fully committed in numerous cases, and from it we have no disposition to recede. Nor do we minimize its importance. Consolidated Stanley M. & M. Co. v. Loeber, 96 Ill. App. 128; Larson v. West, 110 Ill. App. 150. But whether or not any particular case so falls within the proper application of it as to make the action of the trial court such an abuse of the undoubted discretion with which such court is invested in this regard, as to be erroneous, is a question necessarily often of much difficulty and dependent on the facts of that particular case. That the discretion does exist and *may* be used without being abused, there can be no doubt. To this proposition this court is as fully committed as it is to the proposition that such discretion should only be used with great caution. Chicago Exhibi-

tion Co. v. Ill. State Board of Agriculture, 77 Ill. App. 340; Hancock v. American Bonding & Trust Co., 86 Ill. App. 630, 633.

In the case at bar the allegations of the bill must be taken on this appeal as true. They have been summarized so far as they affect this question and these appellants in the statement prefixed to this opinion, and need not be repeated at length. It is enough to say that they are sufficient, so taken as true, to raise the presumption that the decree which it is sought to collect by this bill was for money belonging to the complainants and fraudulently converted by the principal defendant, Peter H. Anderson, to his own use in 1899 and subsequently; that in 1899 he married the defendant Frideborg A. Anderson, and that shortly afterward he bought with this money, but put into his wife's name, the real estate over which the receivership was created, and which he and his wife are enjoined from conveying or encumbering; that Frideborg A. Anderson never gave any consideration of any kind for this property to him or otherwise, and had no means of her own at any time with which to furnish any such consideration, and never acquired any means except by her husband's bestowal on her of the proceeds of this fraudulent conversion; that subsequently said Peter H. Anderson paid large but unascertained sums to Frideborg as gifts, without consideration, out of these funds; that at all times since making the conversion aforesaid, Peter H. Anderson has been insolvent; that almost immediately after an award of arbitrators had been made against him in favor of complainant in this bill for the amount for which the decree that is the basis of this bill was rendered, Frideborg A. Anderson and said Peter H. Anderson encumbered the real estate in question, made the subject of the receivership, for a very large sum; tending to show, or at least to cause reasonable fear, either that they were converting it into a form which could be more easily concealed, or, as the bill alleges, were executing instruments placing an apparent lien on said land for the purpose of hindering and delaying the creditors of Peter H. Anderson, and that

Peter H. Anderson had also, before said award, arranged for certain dispositions in relation to his mining property, by means of certain corporations and the defendants Johnson and Bernard, for the purpose of concealing his assets from, and hindering, delaying and defrauding his creditors, particularly the complainants, this purpose being known to said corporations and said Johnson and Bernard; that on the 13th day of June, 1904, the Circuit Court, in a suit in which P. H. Anderson was both defendant and cross-complainant, entered a decree finding that the award of the arbitrators was legal, valid, binding and conclusive, and ordering the payment of the $232,200 and interest to Hultberg, and that execution issue therefor; that on the next day Peter H. Anderson, for the purpose of preventing the service upon him of such writ of execution as might issue on said decree, left the state and had not returned when the bill was filed and the first amendment to it made.

Nothing is alleged in the bill as amended of the whereabouts of Frideborg A. Anderson on July 1, and it is not necessary for us to hold that in any one of these allegations separately, or in them all taken together, there is that which shows conclusively to the mind of *this* court that the rights of the complainants would have been unduly prejudiced had an attempt at least been made to find and serve Frideborg A. Anderson with notice of the application for the injunctions and for the receiver. The complainant, however, swore, in the language required by the statute, that such would be the result if action was deferred, and the court below, with these allegations and affidavit before it, evidently considered that the affidavit was justified by the sworn allegations. We cannot say that it was an abuse of his discretion amounting to error.

This was not such a matter as the taking of a going business concern out of the hands of its managers and turning it over to an officer of the court might be. No great change in the management or condition or character of the property, against the transfer of which the injunctions are issued, can be anticipated because of them or even because of the

receivership created in relation to a portion of it. By the operation of the injunctions and the receivership, nothing more than temporary inconvenience to any defendant can be reasonably expected to result if the outcome of the full final investigation of the cause should be in his or her favor. In the meantime such injunctions and receivership preserve the property in *statu quo*, and accumulate its income in a fund, for the benefit of whomever it shall be finally adjudged is entitled to them. In view of the sworn allegations of the bill and the state of the whole litigation, this seems a desirable result, and although we look with great disfavor on the appointment of receivers without notice, and in the case at bar are inclined to think it would have been better to have provided for such notice of the application if the parties most nearly affected by it could be found, we are not disposed, recognizing the necessary element of discretion vested in the trial court in that regard, to reverse an interlocutory order so plainly preservative of the *status quo* as this at bar, solely on account of this feeling.

Another reason insisted on by appellants for the reversal they ask, is that the bill under discussion is a creditor's bill and that the judgment creditor has not exhausted his remedy at law, so as to enable him under this statute to maintain this bill. To the rule which they insist is applicable in this cause in this regard, they cite many cases in the Supreme Court and this court. But that rule we understand to be only this—that in a creditor's bill under section 49 of the Chancery Act (Revised Statutes, chapter 22) merely to discover equitable assets, the provisions of the statute authorizing such a bill after execution shall have been returned unsatisfied in whole or in part, are not fulfilled by a return made by order of plaintiff's attorney without any reasonable effort by the sheriff to collect the execution from the legal assets of the defendant.

It is certain that it does not go to the extent of requiring the sheriff to hold the execution for the full term of its life after proper but unavailing efforts have been made to collect it, and the defendant has left the state to evade a de-

mand. That these things happened in this case are the sworn allegations of the amended bill. Bowen v. Parkhurst, 24 Ill. 258; First Nat'l Bank v. Gage, 79 Ill. 207; Huntington v. Metzger, 158 Ill. 272, 283–5; Russell v. Chicago Trust & Savings Bank, 139 Ill. 538; Howe v. Babcock, 72 Ill. App. 68; Illinois Malleable Iron Co. v. Graham, 55 Ill. App. 266.

Nor do we think that it can be said, in view of the allegations of the bill concerning the action of the sheriff and his return on the execution, that the bill itself shows that such return was collusive or improper, because it also alleges the ownership of fifty shares of the capital stock of the State Bank of Chicago, which might have been levied on. Passing by the obvious difficulty of securing a satisfactory return from any levy of an execution on shares of stock in a corporation, inasmuch as they can only be sold subject to the rights of any undiscovered and undiscoverable prior pledgee or vendee, the allegation falls short of a positive assertion that the shares stood in the appellant's name, and were therefore subject to the statutory method of levy against him. He might be " the owner " of shares standing in the name of another. Nor is the prayer in the bill that an injunction may issue against the State Bank, restraining it from permitting any transfer of shares of its capital stock standing in the name of P. H. Anderson, tantamount to an assertion that there are such shares standing in his name.

But, in addition to all this, we think that this bill is not merely a creditor's bill under section 49 of the Chancery Act. It is perhaps that, but it is also something more. Its allegations bring it within the class of bills described in Miller v. Davidson, 3 Gilman, 518, " allied to creditors' bills," where the complainant seeks to remove fraudulent obstructions out of the way of the collection of his judgment. In many cases since, the Supreme Court of Illinois has recognized the distinction and held that in such bills it is not necessary to allege, nor, to sustain them, necessary to prove, that the legal remedy on the judgment has been ex-

hausted. Greenway v. Thomas, 14 Ill. 271; Weightman v. Hatch, 17 Ill. 281; Wisconsin Granite Co. v. Gerrity, 144 Ill. 77. The Appellate Court of the Fourth District has clearly expressed this distinction. In Quinn v. The People, 45 Ill. App. 547, that court says, speaking of this latter class of bills: " The right to file a bill immediately upon obtaining judgment in such cases is based upon the fraud practiced, and lies at the foundation of equity jurisprudence; it is not based upon the statute."

We see no reason for distinction between a case in which land has been fraudulently conveyed by the judgment debtor before judgment, and one in which, when insolvent, he has with his funds purchased land and taken the conveyance in the name of another. In both cases the fraud is the basis of the suit and the cause for the relief prayed and the reasons " lying at the foundation of equity jurisprudence," which would justify the suit in one case before exhaustion of legal remedies would do so in the other. Nothing to the contrary of this is decided in McDowell v. Cochran, 11 Ill. 31, cited by appellant in his reply brief, although a pure dictum therein might be so construed.

It is further urged that even if the matter of want of notice before the entering of the order is overlooked, the allegations of the bill are not sufficient to justify the order granting the injunctions and appointing the receiver, and that it is therefore erroneous. It is said that all the allegations on which the order is based are vague allegations of fear on the part of the complainants, and not of specific facts from which the court can see that danger to the complainants' rights existed. We do not so read the record, as appears from our discussion of these allegations when treating of the question of notice. They are positively sworn to, and we think are sufficient, taken as true, to justify both the interlocutory injunctions and the receivership as " modes by which the court preserves the property in dispute with the least injury to all parties until it can finally determine their respective rights," and that in considering " the comparative injury which might result from

granting or withholding the injunction," the trial court could hardly have decided otherwise. See Chicago Exhibition Co. v. Illinois State Board, 77 Ill. App. 340, and citations therein from Daniell's Chancery Pleading and Practice.

Complaint is made of the drastic character of the injunction in that it forbids Frideborg A. Anderson to withdraw any money from any bank in this state or elsewhere, by check or otherwise, in which bank there may be any money on deposit to her credit or subject to her order. Among the allegations of the bill on which the order was granted, is one in effect that aside from personal effects of a trifling nature, Frideborg A. Anderson never had any means of her own otherwise than through her husband's wrongful use of the complainants' money, and property transferred to her as a gift, without consideration, by him. It is not to be doubted that if, on application for dissolution or modification to the court below, it is shown by Frideborg A. Anderson that she has money deposited in bank, not in fact given to her by her husband without consideration and while insolvent, it will modify the injunction to the extent rendered proper by such showing.

The remaining objections made to the order by the appellants amount to this: first, that the order by which the receiver was appointed was entered before the complainants executed and filed the statutory bond required by the Act of May 15, 1903, concerning the appointment and discharge of receivers; and, secondly, that the bond given in accordance with that order of appointment is insufficient in amount and defective in form. We do not consider these objections tenable. It is not necessary to pass upon the question whether such an appointment, without a contemporaneous provision or condition that it should be on the filing of a statutory bond by the complainant, would have been reversible or not. We do not feel disposed to place such a narrow construction on the statute as to say that where the order, as in this case, provides that the appointee " be and is hereby appointed receiver," etc., " upon the complainants' executing a bond in the sum of," etc., " conditioned to

pay," etc., it is erroneous because such order is made before such bond is actually executed and filed. The receiver is but the officer and arm of the court which appoints him, and will not be allowed under such an order to assume the duties of his office or appointment until the contemporaneous order concerning the bond is fulfilled. The statute by such an order is complied with in letter and spirit.

As to the amount of the bond, that is for the court below, in its discretion, to fix, and, on proper representation, to change, if it can be shown to be insufficient. It is to be noted that the complainants' bond is not to take the place of or secure the receiver's responsibility and liability on his bond, or otherwise, for property coming into his hands; but is for the damages resulting and attorney's fees rendered necessary by the appointment and acts of the receiver if the appointment is revoked or set aside.

If, as is claimed, the condition of the bond does not comply substantially with the statute (on which we express no opinion), it is plain that the remedy is not in an appeal from the order, which provides for the proper condition, but in a representation to the court below concerning the insufficiency of the bond, and the consequent non-compliance with the terms on which the receiver was to be vested with his powers.

The interlocutory order appealed from is affirmed.

*Affirmed.*